## J. E. DILWORTH CO. v. HENSLEE.

### Civ. No. 1013.

United States District Court
Middle D. Tennessee, Nashville D.

July 26, 1951.

Lewis R. Donelson, III, of Memphis, Tenn., for plaintiff.

A. O. Denning, Asst. U. S. Atty., of Nashville, Tenn., and Courtnay C. Hamilton, Attorney, Department of Justice, Washington, D. C., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

#### Findings of Fact

1. The plaintiff, J. E. Dilworth Company, is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business at 730 So. Third Street in the City of Memphis, Tennessee, and filed its Excess Profits and Declared Value Excess Profits Tax returns for the year in question with the Defendant, Lipe Henslee, Collector of Internal Revenue, for the State of Tennessee, Nashville, Tennessee.

2. Plaintiff brings this action pursuant to Section 1340 of Title 28 of the United States Code, for the recovery of certain Excess Profits and declared value excess profits taxes assessed and collected from it by the defendant, Lipe Henslee, for the year 1944.

3. Plaintiff is engaged in the operation of a mill supply business in the City of Memphis, Tennessee, and properly and in due time filed its Federal Excess Profits and Declared Value Excess Profits Tax returns for the calendar year 1944, and paid the tax shown to be due thereon. Thereafter the Commissioner of Internal Revenue, through his agent, caused an examination to be made of the returns of the plaintiff, and as a result thereof held that the income of its wholly owned corporate subsidiary, J. E. Dilworth Company of Mississippi, Inc., for the calendar year 1944 was properly attributable and taxable to plaintiff, thereby increasing the amount of its excess profits and declared value excess profits taxes as shown to be due on its original return, alleging that said subsidiary was established for the primary purpose of evading or avoiding Federal income or Excess Profits Taxes.

4. Pursuant thereto, the defendant, Lipe Henslee, assessed and collected from the plaintiff the sum of $21,286.52 of Excess Profits and Declared Value Excess Profits Taxes and interest, which were paid by the plaintiff on or about the 15th day of February, 1948. Plaintiff thereupon filed a claim for refund therefor on June 28, 1948, and more than six (6) months having passed, and no action having been taken on said claim, the plaintiff, on February 11, 1949, filed this action.

5. J. E. Dilworth Company is a corporation, organized and existing under the laws of the State of Tennessee since 1919, and is engaged in the sale and distribution of mill supplies. Continuously after 1920, it operated a branch at Vicksburg, Mississippi, and was qualified to do business in the State of Mississippi as a foreign corporation.

6. Prior to June, 1943, J. E. Dilworth Company was having difficulties with its Mississippi operation at Vicksburg. Purchasing authorities for the State of Mississippi granted preference to domestic corporations, thereby placing foreign corporations such as J. E. Dilworth Company at a competitive disadvantage. Foreign corporations, for example, were required to file bonds as a condition to bidding on state jobs, whereas, such bonds were not required of domestic corporations in Mississippi. It was found that local customers in Mississippi preferred to buy from Mississippi concerns, and the salesmen acquainted the management with this fact.

7. In addition, plaintiff had been having considerable difficulties with the State of Mississippi, which were culminated by a letter from the Commissioner of the Mississippi State Revenue Department, advising that an investigation of the J. E. Dilworth Company's Mississippi operations as to liability for Mississippi State sales, income and franchise taxes was contemplated. The company was forced to undergo considerable inconvenience and expense in having Mississippi State tax auditors examine its books at its Memphis Office, at the J. E. Dilworth Company's expense. The management consulted and discussed this situation with Mr. Allan Davis, Counsel for the company, for the purpose of finding some relief from the Mississippi taxes which it was being forced to pay on account of business attributed to Mississippi by their tax authorities. As a result of the investigation by the Mississippi tax authorities, a deficiency in sales tax, arising out of sales which the plaintiff felt were properly attributable to the Tennessee operation, was proposed in the amount of $2,020.41 which assessment was outstanding and unsatisfied at the time it was decided to form a Mississippi corporation.

8. It was evident to the sales manager of the Mississippi branch that under the past setup he was not receiving full credit for a great number of sales made as a result of his efforts. His dissatisfaction with this situation was communicated to the management of the company at Memphis, Tennessee, which determined that a more complete separation of the Mississippi operation would have the effect of clearing up this difficulty.

9. As a result of all of these factors and particularly the discussion with the Counsel for the J. E. Dilworth Company as to the Mississippi tax situation, it was concluded that the best method of improving the company's competitive position in Mississippi and terminating its difficulties

with the Mississippi tax authorities was to form a domestic corporation in Mississippi to take over its operations there. Accordingly, on June 30, 1943, at a special meeting of the stockholders of the plaintiff company, the proposal for the formation of a Mississippi corporation to undertake the operation of the Mississippi branch was presented to the stockholders by E. C. Blackstone, President of the company. He urged the approval of this move by the stockholders for the reasons set forth hereinbefore. Mention was not made at this meeting of the possible effect of this action as to Federal Income or Excess Profits Taxes, or any possible Federal tax savings. Whereupon, the stockholders approved a plan, authorizing the Tennessee corporation's purchase of all the authorized capital stock of the newly formed Mississippi corporation and its transfer in consideration therefor the assets of the J. E. Dilworth Company including inventory which had formerly been used in conducting the business of the Mississippi branch. No new assets were purchased by the J. E. Dilworth Company which it had not previously owned; there was merely a transfer of assets already owned and used in Mississippi in return for stock in the subsidiary corporation, known as J. E. Dilworth Company of Mississippi.

10. After the formation of the new corporation, a separate set of books was set up therefor. The employees which had formerly worked for the Mississippi branch were employed by the Mississippi corporation and paid by it out of a separate bank account maintained by it. The Mississippi corporation paid rent on the building which it occupied to the parent corporation, paid its own State and Federal tax liabilities out of its separate bank account. It also maintained a bank account in Vicksburg, Mississippi, which paid its normal operating expenses, such as freight, extra employees, janitor service, lights, gas and water bills, and all of the other separate and necessary expenses of operating an office in the State of Mississippi.

11. All purchases for the new corporation were made by the plaintiff and when shipped to the Mississippi corporation were charged to it. Its principal books and records were maintained by the plaintiff. No salaries were paid to the officers of the Mississippi corporation directly by plaintiff. At the end of each calendar year, the auditor of the corporation would make an allocation of the undistinguishable administrative and overhead expenses which had been borne by the Tennessee corporation, in proportion to the respective sales of the two corporations. After the formation of the new corporation the competitive position of the Mississippi corporation was materially improved, and its percentage of sales increase in the period of 1943, at the time of its formation, to 1948 was far greater than that of the Tennessee corporation. It was able to compromise the sales tax deficiency which had been proposed against it for a fractional portion of the amount of the original assessment, and the Mississippi tax authorities thereupon accepted the books, returns, and records filed by the Mississippi corporation as proper and correct, and no further tax deficiencies were proposed by the State of Mississippi against the Tennessee corporation, arising out of the Mississippi operation. The corporation was able to obtain certain accounts in Mississippi, which it could not obtain in Tennessee, and it is operated as a real and going business, and a successful one since that time. Later, because of its successful experience in Mississippi, the J. E. Dilworth Company organized and formed an Alabama subsidiary.

12. The defendant, through his agent, has made no attempt to attack the allocation of expenses, sales, or other income, between the two corporations, nor the year-end adjustment made to charge the Mississippi corporation for its proportionate part of the administrative and overhead expenses which are otherwise undistinguishable. Rather, the entire income of the subsidiary corporation was allocated in the case to the parent corporation, and this arbitrary allocation was unreasonable and not warranted by the facts.

13. The organization of the Mississippi corporation may have resulted in the decrease of Excess Profits Tax of the Ten-

nessee corporation, but the tax saving was not the primary or the principal purpose for the organization of the Mississippi corporation. The Mississippi corporation was a bona fide corporation, organized for the purpose of carrying on business in the State of Mississippi, and formed for sound business reasons. It did not contemplate the acquisition of any new assets or corporation by the plaintiff, which it had not formerly owned prior to October 8, 1940, but merely resulted in the shifting of the control of the assets formerly used in the operation of the Mississippi branch from direct ownership to indirect ownership through a subsidiary stock relationship.

14. The formation of the plaintiff's wholly owned subsidiary, known as J. E. Dilworth Co. of Mississippi, Inc., was not undertaken for the principal purpose of evading or avoiding Federal Income or Excess Profits Taxes.

### Conclusions of Law

1. The Court has jurisdiction of this cause.

 2. The plaintiff did not form a subsidiary corporation to conduct its Mississippi operation for the principal purpose of evading or avoiding Federal Income or Excess Profits taxes within the meaning of Section 129 of the Internal Revenue Code, 26 U.S.C.A. § 129.

3. The plaintiff did not acquire a new corporation or new assets not owned by it prior to October 8, 1940, by reason of the formation of a subsidiary to conduct its Mississippi operation, within the meaning of Section 129 of the Internal Revenue Code.

4. Section 129 of Title 26 of the United States Code applies only to a situation where one corporation or one individual acquires new assets. Said Section was enacted to prevent a corporation that had large earnings from acquiring another corporation that had large capital tax exemptions, thereby reducing the acquiring corporation's excess profits tax. Section 129 does not apply in the present case where no new assets were acquired by the plaintiff.

5. The Commissioner of Internal Revenue erred in including in the taxable income of the plaintiff for the calendar year 1944 the net profits of the J. E. Dilworth Co. of Mississippi, Inc.

6. The Commissioner of Internal Revenue erred in disregarding the existence of the separate corporate entity of the J. E. Dilworth Company of Mississippi, Inc., in taxing the income therefrom to the plaintiff.

7. Where a corporation is organized for a bona fide purpose, such as the Mississippi corporation in this case, the Commissioner may, under Section 45 of the Internal Revenue Code, 26 U.S.C.A. § 45, in proper cases make an apportionment or reallocation of income between the subsidiary and the parent corporation, but no such apportionment or allocation of income was made in this case. The entire income of the subsidiary was allocated to the plaintiff, and such action of the defendant in this case was unreasonable and arbitrary.

8. The defendant wrongfully and erroneously assessed and collected from the plaintiff excess profits and declared value excess profits taxes in the amount of $21,286.52.

9. The plaintiff is entitled to recover a judgment in the amount of $21,286.52, plus interest thereon, as provided by law, from February 15, 1948.

Judgment accordingly.